# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| ANTONIO RICHARDSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 3:12-cv-409 |
| ) | |
| RONALD COLSON, Warden, ) | Judge Trauger |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION

Before the court is petitioner Antonio Richardson's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1), challenging the legality of his convictions for especially aggravated kidnapping. Richardson is currently an inmate at Riverbend Maximum Security Institution. This court has jurisdiction. 28 U.S.C. § 2241(d).

## I.   BACKGROUND and PROCEDURAL HISTORY

On August 17, 2004, Richardson pleaded guilty in the Criminal Court for Davidson County, Tennessee to the charge of attempted aggravated robbery, and on October 29, 2004, he was convicted after a jury trial on three counts of especially aggravated kidnapping (two of which were merged for sentencing purposes), one count of aggravated assault, one count of felony reckless endangerment, and one count of burglary. All his convictions stem from one unsuccessful attempt to rob a Calhoun's restaurant in Nashville, Tennessee in January 2003. Richardson was sentenced to an effective term of more than 60 years' imprisonment. *State v. Richardson* ("*Richardson I*"), No. M2005-1161-CCA-R3-CD, 2006 WL 1173168, at *1 (Tenn. Ct. Crim. App. May 4, 2006). On initial appellate review, the Tennessee Court of Criminal Appeals overturned Richardson's kidnapping convictions on the basis that "principles of due process forbid dual convictions of especially aggravated kidnapping and attempt to commit especially aggravated robbery," *id.* at *7, and remanded for re-sentencing. The State appealed, however, and on May 7, 2008, the Tennessee Supreme Court reinstated the kidnapping convictions, finding that the dual convictions did not violate due process because the evidence was sufficient to establish the necessary elements of the crime of especially

aggravated kidnapping such that the kidnapping was not merely "incidental" to the accompanying robbery. *State v. Richardson* ("*Richardson II*"), 251 S.W.3d 438, 445–46 (Tenn. 2008). The United States Supreme Court denied certiorari. *Richardson v. Tennessee*, 555 U.S. 1036 (2008).

Richardson thereafter sought post-conviction relief in the Davidson County Criminal Court. The petition was dismissed after a hearing, and Richardson's appeal was unsuccessful. *Richardson v. State* ("*Richardson III*"), No. M2009-1542-CCA-R3-PC, 2011 WL 704462 (Tenn. Ct. Crim. App. Feb. 28, 2011). The Tennessee Supreme Court denied permission to appeal on July 18, 2011.

Richardson filed the present petition on April 25, 2012. In his petition, Richardson asserts only two "grounds" for relief, as follows:

> (1) that Richardson's convictions for especially aggravated kidnapping violated the Due Process Clause of the United States Constitution because the kidnapping was incidental to the offense of attempted especially aggravated robbery; and
>
> (2) that Richardson's counsel rendered ineffective assistance insofar as he failed to challenge Richardson's conviction for especially aggravated kidnapping on the grounds that it violated the Double Jeopardy Clause of the United States Constitution, since Richardson had already pleaded guilty to the charge of attempted especially aggravated robbery.

(See ECF No. 1, at 5, 6.)

Shortly after the petition was filed, the court conducted a preliminary examination thereof and determined that it stated colorable claims for relief. Accordingly, the court entered an order (ECF No. 4) directing the respondent to answer, plead or otherwise respond to the petition. Rule 4, Rules Gov'g § 2254 Cases.

The respondent submitted his answer to the petition (ECF No. 8), conceding that this is Richardson's first petition for habeas relief under 28 U.S.C. § 2254 and that the petition is timely, but arguing that the petition is subject to dismissal on the grounds that (1) the first claim for relief fails to assert an error of federal law; and (2) the state court's resolution of the second claim for relief was not contrary to, or an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts in light of the evidence. Richardson has filed a reply brief (ECF No. 10), in which he also requests the appointment of counsel and a hearing on his petition.

Upon consideration of the petition, the answer, the reply, and the expanded record, the court finds that an evidentiary hearing is not needed in this matter, *see Smith v. United States*, 348 F.3d 545, 550 (6th

Cir. 2003) (an evidentiary hearing is not required when the record conclusively shows that the petitioner is not entitled to relief) and, consequently, that appointment of counsel is unwarranted. Rule 8(c), Rules Gov'g § 2254 Cases (providing for appointment of counsel to represent indigent petitioner if an evidentiary hearing is required). Richardson's request for a hearing and for appointment of counsel will therefore be denied, and the court shall dispose of the petition as the law and justice require. Rule 8(a), Rules Gov'g § 2254 Cases.

## II. FINDINGS OF FACT

### A. Evidence Presented at Trial

The facts underlying the petitioner's conviction were summarized by the Tennessee Supreme Court on direct appeal as follows:[1]

> Allison Howell ("Howell") and Johnnie Lucas ("Lucas") were managers at a Calhoun's restaurant in Nashville. Antonio Richardson ("Richardson") was a line cook for the restaurant. On January 12, 2003, both managers were on duty. Richardson finished his shift and watched football games in the restaurant from mid-afternoon until late in the evening. At some point that evening, Richardson went into the bathroom and waited for the restaurant to close. After the restaurant closed for the night, Lucas went upstairs to the manager's office located directly above the kitchen and deposited the night's receipts in the office safe. Shortly thereafter, Richardson, wearing a ski mask and white latex gloves, emerged from an employees' bathroom under the stairway. He moved past two kitchen employees, grabbed Howell, put a gun to her head, and pushed her up the stairs toward the manager's office. . . . He asked Howell who was in the office, and Howell replied that Lucas was there. Richardson took Howell past the office door to a partially caged area in the stock room. He struck Howell in the head with the gun, injuring her and causing her to fall to the floor.
>
> Richardson went to the office door and knocked on it. When Lucas opened the door, Richardson pointed his gun at her and pushed her to the floor. Richardson asked her where the money was, and Lucas replied that she had already put it in the safe. Richardson dragged Lucas to the safe and demanded that she open it. Lucas testified that the safe was very old and difficult to open. While Lucas attempted unsuccessfully to open the safe, Richardson struck her repeatedly with a metal three-hole punch. Lucas sustained injuries to her head and hand from the beating. At some point, Richardson asked Lucas for the combination to the safe, which Lucas provided. When Lucas continued to fail in her attempts to open the safe, Richardson threatened to shoot her. Richardson then straddled Lucas as she lay on the floor, striking her repeatedly with the gun. Howell testified that she could hear Richardson beating Lucas for approximately twenty minutes.
>
> While Richardson and Lucas were in the office, Richardson's accomplice . . . went to the stock room and bound Howell's hands behind her with duct tape. Later, the

---

[1] State appellate court findings of fact can constitute factual findings in a habeas action. *See, e.g.*, *Girts v. Yanai*, 501 F.3d 743, 749 (6th Cir. 2007); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

accomplice returned to the stock room and asked Howell for the safe combination. He returned to the manager's office with that information.

Richardson dragged Lucas by her hair to the "fan room," a little-used room through which the exhaust fans are vented. There, he struck Lucas in the face with the gun, severing her right optic nerve and causing the loss of her eye. Before leaving, Richardson threatened to kill Lucas if she moved. Richardson and his accomplice were apparently unable to open the safe and left the restaurant without obtaining any money.

Lucas left the fan room and found Howell lying in the caged area of the stock room. Lucas helped Howell stand and assisted in removing the duct tape from her hands. They briefly returned to their prior positions after hearing a noise. After a short time, Howell and Lucas ran to the unoccupied office and locked the door. They called 911 and hid under the desk to wait for the police.

When the police arrived, they found Richardson hiding in the bushes outside the restaurant. He was covered in blood. The police also found a ski mask, a bloody white latex glove, and a bloody gun with a broken grip in the bushes where Richardson was found. Richardson admitted to being involved in the robbery. Richardson told the police that he struck Howell to knock her out and prevent her from calling the police. He also stated that his accomplice struck Lucas in the fan room "to shut her up." The accomplice was never found.

*Richardson II*, 251 S.W.3d at 439–40.

As set forth above, on the basis of this evidence, the petitioner was found guilty on three counts of especially aggravated kidnapping,[2] one count of aggravated assault, one count of felony reckless endangerment, and one count of burglary.

### B. Post-Conviction Evidence

The state appellate court summarized the evidence presented at the post-conviction hearing as follows:

Petitioner testified at the post-conviction hearing that his trial counsel did discuss the *State v. Anthony*, 817 S.W.2d 299 (Tenn.1991) due process issue regarding dual convictions for both attempted especially aggravated kidnapping charges. Petitioner testified, however, that his counsel provided ineffective assistance of counsel because there was no discussion about whether constitutional double jeopardy protections were implicated. Petitioner also complained that his counsel failed to address double jeopardy arguments to the trial and appellate courts. In Petitioner's testimony, his sole complaint of ineffective assistance constituted his trial and appellate counsels' failure to raise the argument that the convictions for especially aggravated kidnapping were barred by double jeopardy prohibitions once he had pled guilty to attempted especially aggravated robbery. The following testimony expresses Petitioner's complaints:

Q Did [counsel] discuss the *Anthony* due-process issues with you, either prior to or

---

[2] Counts one and two of the indictment alleged kidnapping of the victim Lucas under alternate theories; count three alleged a kidnapping of victim Howell.

after the trial?

A  Yes, we discussed the *Anthony* issues.

Q  Did you discuss with [trial counsel]—or did you bring up the double-jeopardy issues at your—

A  No, not at that time. I had no ideas about the double jeopardy.

Q  What's—what is your understanding of—of the double-jeopardy issue that—that shoulda [sic] been raised by [trial counsel], and which you claim was not raised?

A  Well, my issue is, after I pled guilty to attempted especially-aggravated robbery and they convicted me of [ ] especially-aggravated kidnappings, which I feel that both of them had the same elements, far as using a deadly weapon and serious body [sic] injury.

So, I feel, if I have pled guilty to attempted especially-aggravated robbery, I feel that that was double jeopardy that they put me under claims for especially-aggravated kidnapping.

I feel that they shoulda [sic] broke it down to kidnapping, but—but not especially-aggravated kidnapping.

Q  And why is that?  Would you—is it because of the elements of those crimes?

A  As to the elements of serious body [sic] injury and also the use of deadly weapon, which I pleded [sic] guilty for.

Q  Well, what about the elements of—of false imprisonment, that's involved in the attempt—in the especially-aggravated kidnapping, and the element of robbery, in the attempted especially-aggravated robbery?  Do you think those elements are the same?

A  Robbery and kidnapping?

Q  Um-hum (affirmative).

A  Apparently not, no.

Q  Okay.  Well, how do you explain—how do you explain what your complaint is about, this—about their failure to bring up the double jeopardy claim?  How do you explain that, sir?

A  Well, if [trial counsel] [has] knowledge in it, he shoulda [sic] brought it to my attention, that I was getting punished for multiple crimes that—you know—if it was all outta [sic] one issue.

Q  Okay.

A  That he coulda [sic] protected me for in that situation.

Q  Okay. And is there anything else that you would like to add, to explain this to the

> Court?
>
> A No. I just wanted to know—like I say, I pleded [sic] guilty to attempted 'specially-aggravated robbery and I felt like the multiple charges as especially [ ] aggravated [sic] kidnapping is—like I say, is the same elements, far as the use of deadly weapon and serious body injury.
>
> I felt like I took my responsibility, pled guilty to it.
>
> Petitioner had different counsel at trial and on appeal, but both were employed by the public defender's office. Trial counsel testified that he met with Petitioner at least eleven times prior to trial in addition to other communications with Petitioner by phone or letter. Trial counsel acknowledged that he did not specifically argue that double jeopardy principles prohibited the convictions for especially aggravated kidnapping.
>
> Appellate counsel acknowledged that she did not argue on appeal that the especially aggravated kidnapping convictions violated Petitioner's right not to be subjected to double jeopardy in light of his prior guilty plea to attempted especially aggravated robbery. It was her opinion that a double jeopardy claim would have no merit.
>
> At the conclusion of the evidentiary hearing, the post-conviction court took the matter under advisement. The trial court subsequently entered an order denying relief. In it, the trial court accredited the testimony of appellate counsel and the testimony of trial counsel that he met with Petitioner several times and discussed the evidence and different trial defense options with Petitioner. The crux of the post-conviction court's ruling, however, was that Petitioner failed to show that he was prejudiced by his counsels' decision to not raise a double jeopardy claim.

*Richardson III*, 2011 WL 704462, at *2–*4.

## III. DISCUSSION

### A. *Standard of Review of Fully Exhausted Federal Claims*

When a petitioner's application for a writ of habeas corpus raises a federal constitutional claim that has been properly exhausted in the state courts, this court's review of the state court's resolution of the issue is quite limited. The standard for reviewing applications for the writ of habeas corpus is set forth in 28 U.S.C. § 2254(d). Under this provision, a federal court may not grant a habeas petition unless the state court's decision "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* Additionally, this court must presume the correctness of state court factual determinations, and the petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995) ("We give

complete deference to state court findings unless they are clearly erroneous."), *abrogated on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111 (1995).

### B. Ground One – Due Process

The respondent asserts that the claim raised in Ground One, that Richardson's convictions for especially aggravated kidnapping violated the Due Process Clause of the United States Constitution, should be dismissed because (1) the state court's rejection of the claim was not contrary to or an unreasonable application of clearly established federal law; (2) the claim does not allege an error of federal law—the petitioner references "due process" generally but relies entirely on state law rather than federal law; and (3) even if construed as stating a federal claim, the claim is procedurally defaulted because it was presented in state court solely under a state due-process theory.

As an initial matter, the court rejects the respondent's third argument, although it presents a close call. Richardson argued on direct appeal to the Tennessee Court of Appeals, through counsel, that "his convictions for especially aggravated kidnapping violate his right to due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution" and as guaranteed by the Tennessee constitution. (ECF No. 9-8, at 23.) The Tennessee Court of Appeals resolved the claim on the basis of due-process concerns: "The defendant's first appellate issue is that principles of due process prohibit the convictions of especially aggravated kidnapping in the face of the conviction of attempt to commit especially aggravated robbery." *Richardson I*, 2006 WL 1173168, at *2. That court ultimately held that "principles of due process forbid convictions of especially aggravated kidnapping and attempt to commit especially aggravated robbery" on the facts before it. *Richardson I*, 2006 WL 1173168, at *7. Its holding relied expressly on the precedent established in *State v. Anthony*, 817 S.W.2d 299, 301 (Tenn. 1991), in which the Tennessee Supreme Court had held that "the conviction and punishment of a defendant for kidnapping, based on facts insufficient to sustain that conviction, would clearly violate the due process guarantees found in both [the federal and state] constitutions."

Further, on appeal to the Tennessee Supreme Court, the State expressly argued for reversal based on the holding in *Anthony* that due process was only implicated if "the confinement, movement, or detention of the victim was 'essentially incidental' to the associated felony and was not sufficient to support a separate

conviction for kidnapping." (ECF No. 9-8, at 199.) In response, counsel for Richardson argued that the Court of Criminal Appeals correctly applied the due process principles of *Anthony* and its progeny to the facts of *Richardson*. Although neither the parties nor the courts referred in much detail to the due process restraints imposed by the United States Constitution, this was apparently because there was no dispute regarding the parameters of constitutional due process. Rather, the question was whether the facts of the case at bar were sufficient to support the conviction, as required by due process.

The Sixth Circuit has recognized that a petitioner may fairly present both the legal and factual basis of his federal claim to the state court for exhaustion purposes by "phras[ing] the federal claim in terms of the pertinent constitutional law or in terms sufficiently particular to allege a denial of the specific constitutional right in question." *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004). This court finds that Richardson's due-process claim was raised and considered as a federal constitutional claim in the state courts and that the claim is therefore fully exhausted.

However, the respondent is correct that the state court's decision was not contrary to or an unreasonable application of clearly established federal law. Further, although the claim as presented here raises a due-process challenge, the petitioner's argument is devoted almost entirely to a discussion of *State v. White*, 362 S.W.3d 559 (Tenn. 2012), a Tennessee Supreme Court case issued in March 2012, which reconsidered the interplay between kidnapping and other felonies with overlapping elements, like rape and robbery, committed in connection with the kidnapping.[3] In a somewhat confusing opinion, the court held in *White* that a separate due-process analysis is not necessary to the appellate review of a kidnapping conviction accompanied by a separate felony, thus expressly overruling *State v. Anthony*, 817 S.W.2d 299 (Tenn. 1991), and *Richardson II*, among others. Instead, the court held that trial courts must expressly instruct the jury to determine whether a victim's removal or confinement was "essentially incidental" to the accompanying felony offense, and that the failure to so instruct the jury violated the defendant's due process rights in the case before it. More specifically, the court held that

---

[3] Under Tennessee law, any kidnapping conviction requires a "false imprisonment," which occurs when a person "knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty." Tenn. Code Ann. § 39-13-302 (cross-referenced in Tenn. Code Ann. §§ 39-13-303(a), -304(a), and -305(a).

> trial courts must ensure that juries return kidnapping convictions only in those instances in which the victim's removal or confinement exceeds that which is necessary to accomplish the accompanying felony. Instructions should be designed to effectuate the intent of the General Assembly to criminalize only those instances in which the removal or confinement of a victim is independently significant from an accompanying felony, such as rape or robbery.

*White*, 362 S.W.3d at 578. The court found that the evidence on that subject in the case before it was ambiguous: "The proof could be interpreted in different ways and, therefore, the determination of whether the removal or confinement of [the victim] constituted a substantial interference with her liberty was a question of fact for the jury to resolve." *Id.* at 579. Further, although the instructions given to the jury on especially aggravated kidnapping and the lesser included offenses of aggravated kidnapping, kidnapping, and false imprisonment closely tracked the statutory language defining those offenses, they failed to "define the key element—the substantial interference with the victim's liberty—as requiring a finding by the jury that the victim's removal or confinement was not essentially incidental to the accompanying felony offense." *Id.* at 580. On that basis, the court determined that remand for a new trial with proper instructions on the element of the crime was required.

Although the court expressly overruled *Richardson* in reaching this conclusion, the court also held that its decision should not be "construed as creating a new standard for kidnapping. Instead, [the court was] merely providing definition for the element of the offense requiring that the removal or confinement constitute a substantial interference with the victim's liberty." *Id.* at 578. Consequently, the court cautioned that its opinion should not be construed as "articulat[ing] a new rule of constitutional law or requir[ing] retroactive application." *Id.*

In his appellate brief, Richardson seems to be asserting that he is entitled to a new trial based on *White*, which was decided after the conclusion of Richardson's post-conviction proceedings. To the extent that Richardson is asserting a new claim based on the holding in *White*, any such claim is clearly unexhausted because Richardson has not previously raised it in a state-court proceeding. Regardless, *White* articulated a new rule of state law, not federal law, and the *White* court further made it clear that the ruling was not to be applied retroactively. Even if were retroactive, the decision in *White* was largely dependent upon the court's finding that the evidence in that case was equivocal regarding whether the defendant's movement or confinement of the victim was essentially incidental to the accompanying robbery. In

Richardson's case, the court did not find the evidence to be remotely equivocal. Rather, the court held that the evidence "clearly" established that the victims' movement or confinement was not merely incidental to the robbery, and that the movement or detention "clearly" was intended to prevent the victims from calling the police. *Richardson II*, 251 S.W.3d at 444, 446. On that basis, the court found that the convictions for especially aggravated kidnapping in addition to the robbery conviction did not offend due process. Application of *White* therefore would not have helped Richardson.

And finally, more importantly, the Tennessee Supreme Court's decision in Richardson's case was not contrary to and did not involve an unreasonable application of clearly established federal law, nor did it result in a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The Due Process Clause of the Fourteenth Amendment simply requires that a criminal conviction be supported by proof beyond a reasonable doubt with respect to every fact necessary to constitute the offense charged. *In re Winship*, 397 U.S. 358, 363–64 (1970). The standard for determining if a conviction is supported by sufficient evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317 (1979). The jury in Richardson's case found that each element of the especially aggravated kidnapping charges had been proven beyond a reasonable doubt, and the Tennessee Supreme Court expressly considered whether the kidnapping was merely "incidental" to the robbery such that dual convictions would offend due process. Its decision upholding the convictions was neither contrary to law nor unreasonable.[4]

In sum, this court finds that Richardson has not established that the state court's resolution of his due process claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court of the United States, or in a

---

[4] It is clear to this court that the procedure embraced in *White* offers better due-process protections than the procedure still in use at the time of Richardson's appeals, insofar as *White* now requires the jury to resolve the question of whether the kidnapping in a given case was merely incidental to an accompanying felony charge. The petitioner here did not appeal the jury instructions given in his case or raise an express sufficiency-of-the evidence challenge, nor did he assert that his counsel was ineffective for failing to raise these arguments. Even if he had, again, it is unlikely that such arguments would have been effective in his case, as the evidence adduced in support of his conviction for especially aggravated kidnapping was exponentially more damning than the evidence at issue in *White*, which did not show that the victim was seriously injured.

decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Richardson is therefore not entitled to relief on the basis of this claim.

### C. Ground Two – Ineffective Assistance of Counsel

In his second claim for relief, Richardson asserts that his counsel was ineffective for failing to argue that his conviction violated double jeopardy. The Sixth Amendment provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. Amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The Supreme Court has recently confirmed that a federal court's consideration of ineffective-assistance claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*,--- U.S. ----, 131 S. Ct. 770, 788 (2011). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 788.

The law regarding ineffective-assistance claims is well settled. In *Strickland*, the Supreme Court set forth a two-part test for analyzing ineffective-assistance claims. This test requires the defendant to show both that counsel's performance was deficient, in that counsel made errors so serious that counsel was not functioning as the "counsel guaranteed the defendant by the Sixth Amendment," and that the deficient performance prejudiced the defense. *Id.* at 687. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial. *Id.* Further, because proof of both elements is required, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

Thus, even if counsel's performance was deficient in some way, counsel's error, "even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. Richardson can meet his burden of showing prejudice only by

showing that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The prejudice inquiry "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

The Sixth Circuit has recognized that "*Strickland*'s test for prejudice is a demanding one. The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011) (quoting *Harrington*, 131 S. Ct. at 792). Moreover, the Supreme Court has made it clear that this court's job is not to apply *Strickland de novo*, but to consider, under § 2254(d), whether the state court's application of *Strickland* was reasonable. *See Harrington*, 131 S. Ct. at 795 ("A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.")

Richardson raised this claim in his state post-conviction proceedings. The post-conviction court denied relief, and the Tennessee Court of Appeals affirmed that decision based on its application of *Strickland*'s error-and-prejudice standard. *Richardson III*, 2011 WL 704462, at *4–*5. The court held that Richardson could not show prejudice because, even if the argument had been raised, it would have been rejected. To reach that conclusion, the court conducted a lengthy and detailed analysis of the law regarding when multiple convictions violate constitutional prohibitions against double jeopardy under the Tennessee Constitution, Article I, § 10, which, the court noted, was more favorable to criminal defendants than the federal constitution. The court stated:

> In [*State v. Denton*, 938 S.W.2d 373 (Tenn.1996)], the supreme court held,
>
> In sum, resolution of a double jeopardy punishment issue under the Tennessee Constitution requires the following: (1) a *Blockburger* [*v. United States*, 284 U.S. 299 (1932)] analysis of the statutory offenses; (2) an analysis, guided by the principles of *Duchac* [*v. State*, 505 S.W.2d 237 (Tenn.1973)], of the evidence used to prove the offenses; (3) a consideration of whether there were multiple victims or discrete acts; and (4) a comparison of the purposes of the respective statutes. None of these steps is determinative; rather the results of each must be weighed and considered in relation to each other.

*Denton*, 938 S.W.2d at 381.

> The "*Blockburger*" test is:

> [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Blockburger v. United States*, 284 U.S. 299, 304 . . . (1932).

> The elements of attempted especially aggravated robbery are as follows . . . :
>
> (a) the intentional or knowing theft of property from the person of another by violence or putting the person in fear; and
>
> (b) accomplished with a deadly weapon; and
>
> (c) the victim suffers serious bodily injury.

[Tenn. Code Ann.] §§ 39-13-403 and 39-13-401[.]

> "Attempt" is defined as:
>
> (a) A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:
>
> (1) Intentionally engages in action or causes a result that would constitute an offense, if the circumstances surrounding the conduct were as the person believes them to be;
>
> (2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or
>
> (3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

[Tenn. Code Ann.] § 39-12-101[.]

> The elements of especially aggravated kidnapping are as follows . . . :
>
> (a) knowingly removing or confining another unlawfully so as to interfere with the other's liberty; and
>
> (b) it is accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon; or
>
> (c) the victim suffers serious bodily injury[.]

[Tenn. Code Ann.] §§ 39-13-305 and 39-13-302[.]

Petitioner was convicted of the especially aggravated kidnapping of Ms. Howell based upon the element of a deadly weapon being involved. Petitioner was indicted and convicted of the especially aggravated kidnapping of Ms. Lucas on both theories, but the two convictions were merged together.

> Especially aggravated kidnapping requires proof of an unlawful removal or confinement of the victim by the defendant, and this element is not present in the crime of attempted especially aggravated robbery. Also, especially aggravated robbery requires proof of theft from the victim, an element not contained in especially aggravated kidnapping.
>
> In *Duchac*, it is stated that the test "is whether the same evidence is necessary to prove both offenses." *Duchac*, 505 S.W.2d at 241. Petitioner's specific argument is that his conviction for the especially aggravated robbery of Ms. Lucas bars his convictions for especially aggravated kidnapping convictions of Ms. Lucas and Ms. Howell. Since Petitioner was not charged with or convicted of especially aggravated robbery of Ms. Howell, the *Duchac* test does not indicate double jeopardy implications. Furthermore, as to the convictions pertaining to Ms. Lucas, our Supreme Court in Petitioner's direct appeal concluded that "[t]he confinement of [Ms.] Lucas to the office and her movement and confinement to the fan room also were beyond that necessary to consummate the attempted especially aggravated robbery." *Richardson*, 251 S.W.3d at 445. Also, the attempted especially aggravated robbery convictions required evidence as to the attempt to commit theft, which was not required to prove especially aggravated kidnapping. Thus, the *Duchac* test does not indicate double jeopardy problems.
>
> There were two victims (Ms. Lucas and Ms. Howell) of especially aggravated kidnapping and only one of these victims (Ms. Lucas) was also a victim of attempted especially aggravated robbery. As noted above, however, the elements of especially aggravated kidnapping and attempted especially aggravated robbery, while having some common elements, (use of a deadly weapon and/or serious bodily injury) still constitute distinct offenses with different purposes. One prohibits people from theft of property by use of a deadly weapon and where the victim suffers serious bodily injury. The other focuses upon the prohibition of false imprisonment of a person which results in serious bodily injury or is accomplished by a deadly weapon or an article fashioned as a deadly weapon.
>
> We conclude that had Petitioner's trial counsel and appellate counsel asserted that his guilty plea to attempted especially aggravated robbery of Ms. Lucas barred on double jeopardy grounds the prosecution of and the convictions for especially aggravated kidnappings of Ms. Lucas and Ms. Howell, Petitioner would clearly have not been granted relief. Accordingly, we conclude that Petitioner failed to prove prejudice, and under the unique facts of this case, necessarily failed to prove deficient performance by his counsel. Petitioner is not entitled to relief in this appeal.

*Richardson III*, 2011 WL 704462, at *5 –*7.

Based on that analysis, this court finds that the state court's determination that Richardson was not prejudiced by his counsel's failure to raise a double-jeopardy argument was not contrary to or an unreasonable application of clearly established federal law, nor was it an unreasonable determination of the facts in light of the evidence. The state court cited to and applied the correct federal standard under *Strickland*, and its resolution of the facts was amply supported by the record. As set forth above, the Supreme Court has confirmed that an ineffective-assistance claim must be rejected if "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard," *Harrington*, 131 S. Ct. at 788. Richardson's claim fails on that basis. Moreover, even if this court were permitted to apply *Strickland de*

*novo*, it would find that Richardson had not established that he was prejudiced by any purported error of counsel. Richardson is not entitled to relief on this basis either.

**IV.     CONCLUSION**

For the reasons set forth herein, the court finds that Richardson's petition is without merit. His claims for relief will therefore be denied, and this matter dismissed.

The court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2254 petitioner. Rule 11, Rules Gov'g § 2254 Cases. The petitioner may not take an appeal unless a district or circuit judge issues a COA. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the COA must "indicate which specific issue or issues satisfy the [required] showing . . . ." 28 U.S.C. § 2253(c)(3). A "substantial showing" is made when the petitioner demonstrates that "'reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "[A] COA does not require a showing that the appeal will succeed." *Miller-El*, 537 U.S. at 337. Courts should not issue a COA as a matter of course. *Id.*

In this case, the petitioner has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). The court will therefore deny a COA as to the petitioner's claims.

An appropriate order will enter.

_____
Aleta A. Trauger
United States District Judge